UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MERCEDES VASQUEZ o/b/o
ROBINSON VASQUEZ,

               Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION

06 Civ. 7890 (KMK)(PED)

TO: THE HONORABLE KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

     Plaintiff, Mercedes Vasquez, on behalf of her minor son, Robinson Vasquez,

commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the

Commissioner of Social Security ("the Commissioner") denying Robinson's application

for disability insurance benefits on the grounds that he is not disabled. Presently before

this Court are the parties' motions for judgment on the pleadings pursuant to Fed. R. Civ.

P. 12(c). For the reasons set forth below, I respectfully recommend that Plaintiff's

motion be granted—to the extent that the matter should be remanded—and that the

Commissioner's cross-motion should be denied.

I.    BACKGROUND

     Claimant Robinson Vasquez was born on June 23, 1993 (R. 179.)[1]  At the

beginning of the period under consideration, he was in the fifth grade. (R. 157.) In

August, 2003, Robinson was diagnosed as having Crohn's disease (chronic inflammation

---

[1] Notations preceded by "R" refer to the certified record of proceedings relating to this case submitted by Defendant.

of the colon). (R. 165.) Throughout 2003, Robinson was hospitalized on four (4) separate occasions. (R. 100, 102-107, 116-18.) He visited the emergency room for flare-ups of Crohn's disease twice that year. (R. 109-111, 113-15.) His condition required multiple occasions of outpatient care and resulted in missing school. (R. 116-17, 130-41, 133, 136, 163.)

Robinson's condition results in symptoms such as abdominal pain, vomiting, cramping and frequent bathroom use. (R. 188.) He has also complained of bloody stool and/or diarrhea. (R. 141.) He requires multiple medications and a restrictive diet. (R. 188.) These requirements necessitate care from his mother in excess of that normally needed by a child his age. (R. 188).

On December 9, 2003, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on behalf of Robinson. This application was denied on initial administrative review on January 29, 2004. Pursuant to Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a hearing on January 17, 2006. The ALJ issued a written decision on February 7, 2006, concluding that Plaintiff was not entitled to SSI benefits. The ALJ's decision became the final decision of Defendant on July 27, 2006, when the Appeals Council of the Office of Disability Adjudication and Review denied review of said decision. This action followed.

## II.   STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code empowers a Social Security claimant to seek judicial review of the Commissioner's final decision denying such a claimant's application for disability benefits. District courts are empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

2

reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). It is not "the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court must affirm the Commissioner's decision if it is supported by substantial evidence and if the proper legal standards were observed. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997).

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999)(quoting *Mongeur v. Heckler*, 772 F.2d 1033, 1038 (2d Cir. 1983)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). A court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

## III. STATUTORY DISABILITY

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To find a child disabled for the purposes of determining

3

eligibility for SSI payments, an ALJ must determine through a three-step process: (1) that the child is not engaged in substantial gainful activity; (2) that the child has an impairment or combination of impairments that is severe; and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. § 404. 20 C.F.R. § 416.924; *see*, *e.g.*, *Martinez v. Astrue*, 2008 U.S. Dist. LEXIS 67530 at *7 (S.D.N.Y. 2008)(citing *Pollard v. Halter*, 377 F.3d 183, 189-190 (2d Cir. 2004)). In making the third determination—whether a child's impairment meets or equals a listed impairment—the ALJ must consider whether the impairment, alone or in combination with another impairment, "medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(d). Functional equivalency means that the impairment is of "listing-level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain…." 20 C.F.R. § 416.926a(a). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The ALJ considers how a child functions in his activities "in terms of six domains": "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). The regulations provide that a child must be found to be disabled if he or she has an impairment or impairments of "listing-level severity," that is, an "extreme" limitation in one of these domains, or "marked" limitations in two or more domains. 20 C.F.R. § 416.926a(a).

## IV. ALJ'S DETERMINATION

4

In analyzing Robinson's claim, the ALJ applied the three-step procedure

prescribed and concluded that the claimant was not disabled within the meaning of the

SSA from claimed inception date through the date of issuance of the decision. At step

one, the ALJ found that Robinson had not "performed any substantial gainful activity

since the protective filing date" of the application for SSI benefits. (R. 15). At step two,

the ALJ determined that Robinson "had Crohn's disease, which has been a severe

impairment because it has caused more than minimal functional limitations." (R. 16).

At step three, the ALJ determined—without elaboration—that Robinson's

Crohn's disease did not meet or medically equal a listed impairment in the Listing of

Impairments to Appendix 1, Subpart P, Regulations No. 4. (R. 16). He then turned to an

analysis of Robinson's functional impairments of the six (6) listed domains and made the

following findings with regard to said domains:

| | | |
|---|---|---|
| (i) | acquiring and using information: | no limitations |
| (ii) | attending and completing tasks: | no limitations |
| (iii) | interacting and relating with others: | no limitations |
| (iv) | moving about and manipulating objects: | less than marked limitations |
| (v) | caring for yourself: | less than marked limitations |
| (vi) | health and physical well-being: | marked limitations |

(R. 18.) Having found neither marked limitations in two (2) domains or extreme

limitations in one, the ALJ determined that Robinson's impairments "alone or in

combinations, have not been functionally equivalent in severity" to an impairment in the

Listings. (R. 18-19.) The ALJ concluded, therefore, that Plaintiff was not under a

"disability" as defined in the SSA at any time from the claimed inception date. (R. 19).

**V.     ANALYSIS**

Plaintiff asserts Defendant made three errors in his assessment of Robinson's

condition. First, Plaintiff argues that Robinson's condition is the medical equivalent of

the listing for asthma (§ 103.03 of the listings) thereby rendering him disabled under the
equivalency standard. Second, Plaintiff asserts that the ALJ misevaluated Robinson's
functional impairments, specifically that: (a) in the domain of "health and physical well-
being," he suffered from an "extreme" limitation rather than a "marked" one; and (b) in
the domain of "caring for yourself," he suffered from a "marked" limitation rather than a
"less than marked" one. Third, Plaintiff claims that the ALJ incorrectly determined that
Robinson's condition did not medically equal the listing for Crohn's disease.[2] Defendant,
in turn, argues that the Commissioner's decision was based on substantial evidence and
should be affirmed.

## A.    ROBINSON'S CONDITION CANNOT BE ANALYZED UNDER
         THE LISTING FOR ASTHMA

Plaintiff argues that Robinson's Crohn's disease is the medical equivalent of §

103.03(B) of the Listings as in effect at the time of the ALJ's decision. Specifically,

Plaintiff claims that Robinson's repeated hospitalizations and emergency room visits

constitute an impairment equal in severity to that necessary to find a claimant disabled

due to asthma:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring
> physician intervention, occurring at least once every 2 months or at least six times
> a year. Each inpatient hospitalization for longer than 24 hours for control of

---

[2] In his initial memorandum, Plaintiff's counsel argued that Robinson's condition met the
listing for ulcerative colitis, § 5.06. *See* D.E. 10, pp. 12-13. In response, Defendant
noted that Crohn's disease is addressed by a separate listing, i.e., § 5.07. *See* D.E. 17, pp.
15-16. In a reply brief, Plaintiff's counsel conceded his error and argues that claimant's
condition meets the listing for Crohn's disease. *See* D.E. 15, p. 3. Commissioner's
position that Plaintiff has somehow waived the argument that Robinson meets the
requirements set forth in § 5.07 is without merit because: (1) the ALJ found that
Robinson has Crohn's disease; and (2) the ALJ failed to specify which listing(s) he
considered in determining that Robinson's condition failed to meet or medically equal the
Listings.  (R. 19.)

asthma counts as two attacks, and an evaluation period of at least 12 consecutive
months must be used to determine the frequency of attacks;

20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, § 103.03.  While it is true that, as

Plaintiff argues, "if Robinson had asthma requiring the level of treatment his Crohn's

disease has required, there would be no question that he meets the listings…", Plaintiff

cites to no case law allowing application of unrelated Listings.

SSA regulations set forth the analytical framework for medical impairments:

Medical equivalence for adults and children.

\*     \*     \*

(b) How do we determine medical equivalence? We can find medical equivalence
in three ways.

(1)(i) If you have an impairment that is described in the Listing of Impairments in
appendix 1 of subpart P of part 404 of this chapter, but --

(A) You do not exhibit one or more of the findings specified in the particular
listing, or

(B) You exhibit all of the findings, but one or more of the findings is not as severe
as specified in the particular listing,

(ii) We will find that your impairment is medically equivalent to that listing if you
have other findings related to your impairment that are at least of equal medical
significance to the required criteria.

(2) If you have an impairment(s) that is not described in the Listing of
Impairments in appendix 1 of subpart P of part 404 of this chapter, we will
compare your findings with those for closely analogous listed impairments. If the
findings related to your impairment(s) are at least of equal medical significance to
those of a listed impairment, we will find that your impairment(s) is medically
equivalent to the analogous listing.

20 C.F.R. § 416.926.  The parties now agree that Crohn's disease is described in section

5.07 of the Listings. *See* D.E. 15, p. 3; *see also Sales v. Apfel*, 188 F.3d 982, 984 (8th

Cir. 1999)(describing Crohn's disease as a listed impairment under the SSA.)  Though §

7

5.07, as in force at the time of consideration of Robinson's claim, did not specifically read "Crohn's disease"—the section was titled "Regional enteritis"[3]—even assuming that § 5.07 was inapplicable, 20 C.F.R. § 416.926(b)(2) specifically requires consideration of an "analogous" impairment. It cannot be said that Crohn's disease, an illness of the digestive system, is analogous, i.e. similar, to asthma, a respiratory disease. No error lies, then, in this regard, with Defendant's conclusion that Robinson was not disabled.

## B.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDINGS WITH REGARD TO ROBINSON'S FUNCTIONAL IMPAIRMENTS

As a preliminary matter, it should be noted that Plaintiff does not argue against the findings of the ALJ with regard to the first four (4) domains of functioning, i.e., acquiring and using information; attending and completing tasks; interacting and relating to others; and moving about and manipulating objects. Plaintiff argues that: (a) Robinson has a marked limitation in caring for himself; and (b) an extreme limitation in health and physical well-being. Defendant asserts that the ALJ's determinations were supported by substantial evidence.

As part of the record used in evaluating Robinson's claim, the ALJ had an evaluation prepared by Dr. Manrique Quinto. (R. 185-90.) Dr. Quinto is an agency review doctor. Under the applicable regulation, "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly

---

[3] Regional enteritis is Crohn's disease. *See*
http://www.nlm.nih.gov/medlineplus/ency/article/000249.htm--enter [regional enteritis] in search field.

qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. See § 416.912(b)(6)." 20 C.F.R. § 416.927(f)(2)(i).

Dr. Quinto opined that Robinson suffered from a less than marked limitation in the domain of caring for yourself and a marked limitation in the domain of health and physical well-being. (R. 188.) Dr. Quinto's comments in his evaluation of the limitations demonstrate a familiarity with the medical record and do not contain any material misstatements of fact that would cast considerable doubt as to his determinations. The agency review doctor's report does reflect one discrepancy in that Dr. Quinto indicated that Robinson had a "history of Chron's (*sic*) disease with 3 admissions in the last year." *Id.* Medical records reflect that Robinson was admitted to the hospital four (4) times in 2003. (R. 99-103, 116-118, 122-127, 166-169, 171-172.) While the record is not specific, it would be reasonable to infer that all hospitalizations were related to his Crohn's disease. Plaintiff has not produced any evidence, however, that this apparent discrepancy would result in a conclusion different from that reached by Dr. Quinto. Further, Plaintiff has not proffered any evidence from a medical expert or treating physician contradicting Dr. Quinto's findings as to Robinson's functional capacities. In the absence of any contradictory medical evidence, the ALJ's decision with regard to Robinson's functional capacities is supported by the only substantial evidence in the record. Thus, as Robinson was not found to have either an extreme

limitation in one domain or marked limitations in two domains, the ALJ's determination

that he was not functionally disabled was in accordance with applicable law.

## C. THE ALJ'S DECISION REGARDING WHETHER ROBINSON'S CONDITION MET OR EQUALED THE LISTINGS WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that Robinson's condition met § 5.07 of the Listings. *See* D.E. 15.

p. 3. That listing defined the disabling conditions as follows:

Regional enteritis (demonstrated by operative findings, barium studies, biopsy, or endoscopy). With:

A. Persistent or recurrent intestinal obstruction evidenced by abdominal pain, distention, nausea, and vomiting and accompanied by stenotic areas of small bowel with proximal intestinal dilation;

or

B. Persistent or recurrent systemic manifestations such as arthritis, iritis, fever, or liver dysfunction, not attributable to other causes;

or

C. Intermittent obstruction due to intractable abscess or fistula formation;

or

D. Weight loss as described under § 5.08.

Plaintiff claims that Robinson meets the listing for subpart A in that a radiological

examination and a CT scan revealed narrowing, thickening, and extrinsic compression of

the terminal ileum.[4] (R. 123, 139-40.) As Defendant acknowledges (D.E. 18, p. 3),

stenosis is a narrowing or constriction of the diameter of a bodily passage or orifice.[5] It

appears, then, that Robinson's condition *may* have met the qualification of "intestinal

---

[4] The terminal ileum is the most distal part of the small intestine.

[5] *See* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html--enter [stenosis] in search field.

obstruction…with stenotic area of small bowel with proximal intestinal dilation" as set forth in § 5.07.[6] Further, the record is replete with evidence of abdominal pain, nausea and vomiting. (R. 104-05, 108-09.) It is wholly unclear, then, how Robinson failed to meet the listing for Crohn's disease, and the ALJ's decision is silent as to his reasoning. (R. 16, 19.)

In cases where "the claimant's symptoms as described by the medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." *Surita ex rel. Cifuentes v. Astrue*, 2008 U.S. Dist. LEXIS 97686 at *15 (S.D.N.Y. 2008), *quoting Giles v. Chater*, 1996 U.S. Dist. LEXIS 2925 at *15 (W.D.N.Y. 1996). *See also Booker v. Heckler*, 1984 U.S. Dist. LEXIS 14828 at *9 (S.D.N.Y. 1984)(court "cannot find substantial evidence" supporting denial where ALJ fails to explain why relevant symptoms don't match Listings). In the instant matter, the ALJ's decision contains no discussion of why Robinson's condition did not meet or medically equal § 5.07 of the listings or, indeed, whether that listing – or any specific listing—was considered at all. Absent some explanation of why Robinson's impairments did not meet or medically equal the listing, "the ALJ's decision is not supported by substantial evidence." *Surita*, 2008 U.S. Dist. LEXIS 97686 at *16.

Pursuant to 42 U.S.C. § 405(g), sentence four, the appropriate disposition of this case is remand to the commissioner for further evidentiary development of the record consistent with this opinion. *See Almonte v. Apfel*, 1998 U.S. Dist. LEXIS 4069 at *24

---

[6] The term "small bowel" is interchangeable with the term "small intestine." *See* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html--enter [small bowel] in search field.

11

(S.D.N.Y. 1998)(finding remand to Commissioner for further evidentiary development appropriate disposition for case reversed because of gaps in record).

## VI.    CONCLUSION

For the reasons set forth herein, I respectfully recommend that the Court GRANT Plaintiff's Motion for Judgment on the Pleadings and DENY Defendant's Cross-Motion for Judgment on the Pleadings and the case be remanded to the Commissioner for further administrative proceedings consistent with this opinion.

## VII.   NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. CIv. P. 6(d), or a total of thirteen (13) working days, *see* Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated:   June 19, 2009
         White Plains, N.Y.

12

Respectfully submitted,

PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE